UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BIOTRONIK, INC., an Oregon                    Case No. 3:12-cv-446-AA
Corporation; RUSSELL BROMING;                       OPINION AND ORDER
ROSS FISHBERGER; SHANE
McLAUGHLIN; SCOTT McCULLOUGH;
and WALTER PAWLIW,

       Plaintiffs,

    v.

ST. JUDE MEDICAL S.C., INC.,
a Minnesota corporation,

       Defendant.
_____

Aiken, Chief Judge:

    Plaintiffs filed suit in state court seeking a declaration
regarding the scope of the individual plaintiffs' post-
termination obligations to defendant St. Jude Medical S.C., Inc.
(St. Jude), their former employer. St. Jude removed the action
to federal court pursuant to 28 U.S.C. §§ 1332 and 1441,

1 - OPINION AND ORDER

alleging jurisdiction based on diversity of citizenship and the amount in controversy. Plaintiffs now move for remand pursuant to 28 U.S.C. § 1447, arguing that they seek only declaratory relief and do not allege the threshold amount in controversy necessary to establish diversity jurisdiction. St. Jude opposes the motion for remand and moves to dismiss or to transfer the case to the District of Minnesota on grounds of improper venue. The motion to remand is denied and the motion to dismiss is granted.

## BACKGROUND

Plaintiff Biotronik, Inc. (Biontronik) is an Oregon corporation doing business in the State of Oregon, and all individual plaintiffs are residents of the State of New York. St. Jude is a Minnesota corporation with its principal place of business in Texas.

Biotronik and St. Jude are competitors in the sale and marketing of cardiac rhythm management (CRM) devices. CRM devices use electrical pulses to treat improperly beating hearts and other cardiac conditions. According to Biotronik's complaint, the market for CRM devices is very competitive and the devices are technologically complex. As such, the people who sell and manage the sale of these devices must be skilled salespeople and managers with technical and clinical knowledge

2 - OPINION AND ORDER

of the devices. Accordingly, both Biotronik and St. Jude require their sales representatives and managers to sign employment agreements that include post-termination noncompetition, confidentiality, and non-solicitation obligations (Post-Termination Obligations).

In 2007, Biotronik and St. Jude entered into a Settlement Agreement that required the parties to provide forty-eight hours written notice of any intended lawsuit or claim "against each other or their respective employees, agents, or independent representatives." Compl. ¶ 13. If the parties are unable to resolve the dispute within forty-eight hours, "the party providing notice of the claim shall file the action necessary to resolve the claim if so desired." Id.

Plaintiffs also allege that Biotronik and St. Jude entered into an "informal agreement" regarding noncompetition disputes. Under this alleged agreement, "only those [accounts] which the employee called upon or supported four or more times during their last year of employment will be included as non-compete accounts." See Compl. Ex. 1 (email communications between Biotronik and St. Jude representatives).

Plaintiff Shane McLaughlin is a former sales manager at St. Jude who was responsible for accounts in the Long Island, New York area. The other individual plaintiffs were St. Jude sales

representatives in the same region. During their employment with

St. Jude, all individual plaintiffs signed Employment Agreements

that included Post-Termination Obligations regarding competition

and solicitation.

Specifically, McLaughlin's Employment Agreement provided:

7. Confidential Information and Assignment of Inventions

\*\*\*

. . . . Employee will not disclose to a third party or
use for Employee's benefit Confidential Information of
[St. Jude Medical S.C., Inc., "SJMSC"]. "Confidential
Information" means any information used or useful in
SJMSC's business that is not generally known outside
of SJMSC and that is proprietary to SJMSC relating to
any   aspect   of   SJMSC's   existing   or   reasonably
foreseeable business which is disclosed to Employee or
conceived,   discovered   or   developed   by   Employee.
Confidential Information includes but is not limited
to: product designs, including drawings and sketches;
marketing materials; marketing plans or proposals;
customer information; manufacturing processes; price,
accounting   and   cost   information;   clinical   data;
administrative   techniques   and   documents;   and
information designated by SJMSC as "Confidential."

\*\*\*

8. Non-Competition. During Employee's employment and
for a period of one (1) year after the date of
termination of employment with SJMSC for any reason,
Employee will not directly or indirectly engage as a
consultant,   independent   contractor,   proprietor,
stockholder, partner, co-venturer, officer, director,
employee, or in any other capacity with any business
which designs, manufactures or sells products which
compete with products, now or later during Employee's
employment, that are designed, manufactured or sold by
SJMSC or any of its affiliates in the territory
assigned to Employee during the last year of
Employee's employment. . . . For a period of one (1)

4 - OPINION AND ORDER

year after the date of termination of employment with SJMSC for any reason, Employee will not directly or indirectly sell, demonstrate, promote, solicit or support the sale of, support of supervise the implantation or other use of, or otherwise have any involvement with the sale or use of any product which competes with any products which Employee sold or solicited the sale of during Employee's employment, to or with any customer upon whom Employee called during the last year of Employee's employment. For a period of one (1) year after the date of termination of employment with SJMSC for any reason, Employee will not directly or indirectly influence or attempt to influence such customers to direct their business involving products sold by Employee to any competitor of SJMSC.

9. Non-Solicitation. During Employee's employment and for a period of one (1) year after termination of Employee's employment with SJMSC for any reason, Employee will not, directly or indirectly, solicit on Employee's own behalf or on behalf of another person or entity, the services of any person who is an employee or sales representative of SJMSC or any of its affiliates, or solicit any of SJMSC's or its affiliates' employees or sales representatives to terminate their employment in order to compete with St. Jude Medical, Inc., SJMSC or any of their affiliates.

Fox Decl. Ex. 1 at 41-43.

The Employment Agreements also contained provisions governing choice of law, forum selection, and jurisdiction:

10. Miscellaneous

***

G. Governing Law. This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction.

5 - OPINION AND ORDER

> H. Exclusive Jurisdiction. All actions or
> proceeding relating to this Agreement will be
> tried and litigated only in the Minnesota State or
> Federal Courts located in Ramsey County,
> Minnesota. Employee submits to the exclusive
> jurisdiction of these courts for the purpose of
> any such action or proceeding, and this submission
> cannot be revoked. Employee understands that
> Employee is surrendering the right to bring
> litigation against SJMSC outside the State of
> Minnesota.

Fox Decl. Ex. 1 at 44.

During the week of February 27, 2012, the individual plaintiffs announced that they were resigning to follow former St. Jude Division Vice President Paul Woodstock to Biotronik under guaranteed-compensation contracts. Subsequently, Biotronik provided St. Jude with a list of accounts (the List) subject to the individual plaintiffs' Post-Termination Obligations. St. Jude disputes the accuracy of the List and asserts that additional physician and hospital accounts are subject to the individual plaintiffs' Post-Termination Obligations. St. Jude also alleges that the individual plaintiffs are in violation of their Employment Agreements.

After the parties could not resolve their disagreement over the List, plaintiffs filed suit in Circuit Court for Clackamas County seeking a declaration that the "Individual Plaintiffs['] Post-Termination Obligations relating to noncompetition . . . are as described in the List." Compl. at 4-5.

6 - OPINION AND ORDER

St. Jude removed the case to federal court based on diversity jurisdiction. Plaintiffs move to remand the case to state court for lack of subject matter jurisdiction, and St. Jude moves to dismiss or transfer the action to the District of Minnesota pursuant to the forum selection clause in the Employment Agreements.[1]

## DISCUSSION

### A. Subject Matter Jurisdiction

A party asserting diversity jurisdiction must allege complete diversity of citizenship between the parties and an amount in controversy of at least $75,000. 28 U.S.C. § 1332(a); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996) (discussing requirements of diversity to establish subject matter jurisdiction). Here, the parties are of diverse citizenship and the only issue is the amount in controversy.

To warrant dismissal or remand, "'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" Budget Rent-A-Car Inc. v. Higashiguchi,

---

[1] On March 27, 2012, St. Jude filed suit against Biotronik and several former St. Jude employees, including individual plaintiffs, alleging violations of restrictive covenants contained in the relevant Employment Agreements. On May 29, 2012, St. Jude amended the complaint and added another former employee as a defendant. The Minnesota state court recently denied Biotronik's motions to stay and granted St. Jude's motions for temporary injunctive relief. Notice of Filing in Related Case (doc. 29) Ex. A.

109 F.3d 1471, 1473 (9th Cir. 1997) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "Under this 'legal certainty' standard, the federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." Travelers Prop. Cas. Co. of Am. v. Zurich Am. Ins. Co., 2012 WL 3042993, at *1 (D. Ariz. July 25, 2012) (internal quotation marks and citation omitted).

On the face of plaintiffs' complaint, they do not claim damages or monies owed by St. Jude. Rather, plaintiffs seek a declaration that the individual plaintiffs' Post-Termination Obligations are reflected accurately in the List provided to St. Jude. Stated another way, plaintiffs seek a declaration that the individual plaintiffs may solicit the disputed accounts in accordance with the Post-Termination Obligations of their Employment Agreements.

When declaratory relief is sought, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). St. Jude bears the burden of establishing by a preponderance of the evidence that the value in this case exceeds $75,000. Cohn v. Petsmart, Inc., 281 F.3d 837, 839 (9th Cir. 2002) ("To support removal based on diversity

8 - OPINION AND ORDER

jurisdiction, [the defendant] has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000."). A court may consider supplemental evidence later provided by the removing defendant, which was not originally included in the removal notice. Id. at 840.

Contrary to plaintiffs' assertion, the object of the litigation is not the accuracy of the List or the terms of the Settlement Agreement between Biotronik and St. Jude. Rather, the object of the litigation is the individual plaintiffs' ability to solicit the disputed accounts under their Employment Agreements. See Hunt, 432 U.S. at 347 (finding that the object of the litigation was "the right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the challenged statute" and that "[t]he value of that right is measured by the losses that will follow from the statute's enforcement"); cf. Davis v. Advanced Care Tech., Inc., 2007 WL 1302736, at *2 (E.D. Cal. May 02, 2007) ("Where the object of the litigation is a noncompetition agreement designed to protect a company's confidential information, the value to the company of protecting that information is the amount in controversy.").

St. Jude argues that in determining the value of the individual plaintiffs' solicitation of accounts, the court may

9 - OPINION AND ORDER

look to the value of the disputed accounts and the plaintiffs'
compensation, and that based on such evidence, this case easily
meets the threshold amount. See Mahoney v. Depuy Orthopaedics,
Inc., 2007 WL 3341389, at *5-6 (E.D. Cal. Nov. 8, 2007) (in
action seeking to prohibit enforcement of non-competition
clause, court looked to the plaintiff's compensation and sales
revenue to determine amount in controversy); see also Luna v.
Kemira Specialty, Inc., 575 F. Supp. 2d 1166, 1172-73 (C.D. Cal.
2008) (accord); Basicomputer Corp. v. Scott, 791 F. Supp. 1280,
1286 (N.D. Ohio 1991), aff'd 973 F.2d 507 (6th Cir. 1992) (in
action seeking enforcement of non-competition covenants, court
looked to commissions, profits from sales revenue, and estimated
loss of revenue to determine the amount in controversy).

For example, St. Jude emphasizes that the individual
plaintiffs had collective responsibility for the sales territory
encompassing the Long Island, New York area, including St.
Francis Hospital and other major St. Jude accounts. See Arancio
Decl. at 2-24. St. Jude's CRM devices cost approximately $3,400
to $18,000 each, and annual CRM sales revenues for the disputed
accounts totaled over $22 million at the time the individual
plaintiffs left their employment with St. Jude. Arancio Decl. at
24. Thus, St. Jude maintains that the individual plaintiffs'
ability to solicit St. Jude accounts in the Long Island region

10 - OPINION AND ORDER

could result in losses of sales revenue for St. Jude, and gains in revenue for Biotronik, that far exceed the jurisdictional amount. Further, St. Jude emphasizes that the individual plaintiffs' annual compensation with St. Jude ranged from approximately \$150,000 to \$400,000, thus providing additional evidence of the value of the individual plaintiffs' ability to solicit the disputed accounts. See Hawks Decl. at 2.

Plaintiffs argue that St. Jude's assertions regarding the amount in controversy are conclusory and speculative. Plaintiffs maintain that St. Jude presents no evidence to establish a direct link between the individual plaintiffs' ability to solicit the disputed accounts and the potential losses to St. Jude. Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007) (a court cannot base jurisdiction on a defendant's "speculation and conjecture"); Biotronik v. ELA Med., Inc., Case No. BC 357665 (C.D. Cal. 2006) (finding that defendant "failed to show a direct link between its projected loss of revenue and non-enforcement of the Agreement").[2] Plaintiffs further contend that a declaration regarding the

---

[2] Plaintiffs and St. Jude also cite Judge Simon's ruling in Biotronik, Inc. v. Medtronic USA, Inc., 840 F. Supp. 2d 1251 (D. Or. Jan, 4, 2012) to support their respective arguments. However, that case did not involve a claim asserted by a former employee to resolve the scope of existing non-competition obligations. Thus, while informative, I do not find the case particularly supportive of the parties' positions in this case.

11 - OPINION AND ORDER

accuracy of the List results in no "pecuniary result" to either party. See In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.").

Importantly, St. Jude need only show by a preponderance of the evidence that the value of the individual plaintiffs' ability to solicit the disputed accounts exceeds $75,000. Cohn, 281 F.3d at 839. Plaintiffs do not dispute that the individual plaintiffs received high levels of compensation in exchange for their sales services and their acceptance of the Post-Termination Obligations. Viewed collectively (or individually), such evidence renders the court hard-pressed to find that the individual plaintiffs' ability to solicit the disputed accounts is valued at less than $75,000 by Biotronik or by the individual plaintiffs. See Luna, 575 F. Supp. 2d at 1172-73; Mahoney, 2007 WL 3341389, at *5-6.

Further, a declaration in plaintiffs' favor would allow the individual plaintiffs to solicit the disputed accounts, resulting in potential sales revenue to Biotronik and potential sales losses to St. Jude - revenues and losses that easily exceed the jurisdictional amount given the value of the CRM

12 - OPINION AND ORDER

devices and the amount of sales revenue at stake. Davis, 2007 WL 1302736, at *1-2. Again, plaintiffs do not dispute that the sales revenue from the disputed accounts extends into the millions of dollars. Thus, I cannot find to a "legal certainty" that the amount in controversy is less than $75,000.

In sum, I find that St. Jude has established by a preponderance of the evidence that the value of the individual plaintiffs' ability to solicit the disputed accounts, and the potential gains and losses resulting from that ability, exceed the jurisdictional threshold of $75,000. Therefore, the motion to remand is denied.

## B. Forum Selection Clause and Venue

St. Jude moves for dismissal or transfer of this action based on the forum selection clause contained in the individual plaintiffs' Employment Agreements with St. Jude. The forum selection clause unambiguously provides that "[a]ll actions or proceeding relating to this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota." Fox Decl. Ex. 1 at 44.

In the Ninth Circuit, forum selection clauses are deemed "presumptively valid" and "should be honored 'absent some compelling and countervailing reason.'" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting M/S

13 - OPINION AND ORDER

Bremen v. Zapata Off-Shore Co., 404 U.S. 1, 12 (1972)). A forum

selection clause generally is upheld unless:

> (1) its incorporation into the contract was the result
> of fraud, undue influence, or overweening bargaining
> power; (2) the selected forum is so gravely difficult
> and inconvenient that the complaining party will for
> all practical purposes be deprived of its day in
> court; or (3) enforcement of the clause would
> contravene a strong public policy of the forum in
> which the suit is brought.

R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir.

1996) (internal quotation marks and citations omitted). "The

party challenging the clause bears a 'heavy burden of proof.'"

Murphy, 362 F.3d at 1140 (quoting M/S Bremen, 407 U.S. at 17).

Plaintiffs do not argue that the forum selection provision

resulted from fraud or undue influence. Rather, plaintiffs

contend that the forum selection clause does not apply because

the declaratory relief sought implicates only the accuracy of

the List pursuant to the terms of the Settlement Agreement and

information   agreement   between   Biotronik   and   St.   Jude.

Accordingly, plaintiffs argue that this dispute does not involve

the  individual  plaintiffs'  obligations  under  the  Employment

Agreements. I disagree.

Granted, the parties dispute the accuracy of the Lists,

which Biotronik purportedly provided in accordance with the

terms of the Settlement Agreement between Biotronik and St.

Jude. However, the crux of this case is not whether Biotronik or

14 - OPINION AND ORDER

St. Jude has complied with the Settlement Agreement but whether individual plaintiffs may solicit disputed accounts in accordance with their Post-Termination Obligations set forth in their Employment Agreements. Indeed, in support of their motion for remand, plaintiffs specifically assert that this case "focuses . . . on the scope of Individual Plaintiffs' post-termination obligations" and seeks a declaration "that all of the Individual Plaintiffs are properly performing all of their enforceable post-termination obligations to St. Jude." Pls.' Reply Mem. at 2, 8. Thus, contrary to plaintiffs' assertions in opposing dismissal, the court must analyze whether the individual plaintiffs' solicitation of disputed accounts complies with their Post-Termination Obligations. See Pls.' Mem. in Opp'n to Dismiss/Transfer at 7.

Plaintiffs also argue that Biotronik cannot be bound by the forum selection clause because it was not a party to the Employment Agreement. However, the Ninth Circuit has ruled that a forum selection clause may be enforced against a non-party when the conduct of the non-party is "closely related to the contractual relationship" between the signatory parties. Holland Am. Line, Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007) (citing Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509 (9th Cir. 1988)). Here, Biotronik's claim arises from

15 - OPINION AND ORDER

the Employment Agreements between the individual plaintiffs and St. Jude and is therefore "closely related" to those contractual relationships. Absent the Employment Agreements, Biotronik would have no need for a declaration that the List reflects the individual plaintiffs' Post-Termination Obligations.

Accordingly, I find that plaintiffs are bound by the forum selection clause in the individual plaintiffs' Employment Agreements, and that venue is improper in this District. Rather than transfer this case, I find dismissal appropriate in light of the pending state court action in Minnesota.

CONCLUSION

Plaintiffs' Motion to Remand (doc. 4) is DENIED, and defendant's Motion to Dismiss and Alternative Motion to Transfer (doc. 13) is GRANTED. This action is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated this 5th day of Aug, 2012.

Ann Aiken
United States District Judge

16 - OPINION AND ORDER